A. WILLIAM MAUPIN, ESQ. (NSBN 1315)
awmaupin@clarkhill.com
DOMINIC P. GENTILE, ESQ. (NSBN 1923)
dgentile@clarkhill.com
MICHAEL CRISTALLI, ESQ. (NSBN 6266)
mcristalli@clarkhill.com
BERT WUESTER, ESQ (NSBN 5556)
bwuester@clarkhill.com
MARK S. DZARNOSKI, ESQ. (NSBN 3398)
mdzarnoski@clarkhill.com
**CLARK HILL PLLC**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
ph.: (702) 862-8300; fax: (702) 862-8400
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CLARK COUNTY NEVADA, | Case No.:  2:21-cv-1328-JCM-VCF |
| Plaintiffs, | Dept. No.:  14 |
| vs. | |
| ORBITZ WORLDWIDE, LLC., et al. | **PLAINTIFF'S RESPPONSE TO DEFENDANTS' MOTION TO DISMISS** |
| Defendants. | |

Plaintiff, Clark County Nevada, by and through counsel of record, of the law firm of Clark Hill, PLLC, and hereby submits its Response to Defendants' Motion to Dismiss [Dkt 13].

This response is made and based upon all the pleadings and papers on file herein, the attached points and authorities, in conjunction with such evidence and further authorities as the court may require at the time this matter is considered.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.

**THE COURT LACKS SUBJECT MATTER JURISDICTION TO CONSIDER THIS MOTION**

Plaintiff originally filed this matter in the Eighth Judicial District Court in and for Clark County, Nevada on May 14, 2021.  Defendants filed a Notice of Removal of the action to this

Court on July 13, 2021.  [ECF1].   Plaintiff has challenged the removal based upon the lack of complete diversity and failure to satisfy the $75,000 amount in controversy for each removing Defendant by filing a Motion to Remand.  [ECF 9]  While briefing has been completed with respect to Plaintiff's Motion for Remand, the Court has not yet ruled upon that Motion.

Plaintiff is required to file an Opposition to the instant Motion to Dismiss or face the possibility that said Motion will be granted as unopposed.  For the reasons set forth in ECF 9 and ECF 12,  which are incorporated herein by reference, this Court lacks subject matter jurisdiction to rule on the instant Motion.

This opposition addresses the merits of the Motion but is not a waiver of its arguments that the case should be remanded to the Eighth Judicial District Court.  Plaintiff reserves all rights set forth in its Motion to Remand.

**II.**

**THE EXCLUSIVE REMEDIES DOCTRINE IS NOT APPLICABLE TO THIS CASE**

The Exclusive Remedies Doctrine is not applicable to this case.  Notwithstanding its inapplicability, Defendants seek the dismissal of Plaintiff's third, fourth, fifth, sixth and seventh causes of action[1] for conversion, breach of fiduciary duty, unjust enrichment, constructive trust and violation of the Nevada deceptive trade practices act, respectively, through application of this doctrine.  Defendants incorrectly assert that Plaintiff is trying to "make an end-run around its own taxing scheme and remedies, by seeking to enforce the Lodging Tax via "tagalong" tort and fraud claims."  See Motion [ECF 13] at 5:6-8.

What Plaintiff is actually doing in this litigation is making a claim for unpaid taxes pursuant to violation of Clark County Code Ordinances (i.e. First and Second Claims for Relief) and combining those claims with other claims arising under common law and/or statute.  Defendants'

---

[1]  The Complaint inadvertently identifies two different causes of action as its "Fifth Claim for Relief."  Correcting for this typographical/ministerial error, Plaintiff's Fifth Claim for Relief is for unjust enrichment, its Sixth Claim for Relief is for constructive trust and its Seventh Claim for Relief is for violation of the Nevada deceptive trade practices act

real argument, stripped of its hyperbole regarding the exclusive remedies doctrine, is that Clark County Ordinances Chapter 4.08 abrogates otherwise available common law and statutory rights and remedies if the subject matter of the lawsuit somehow involves claims of unpaid transient lodging taxes.  Citing an 1879 case (i.e. *State v. Yellow Jacket Silver Mining Co.*, 14 Nev. 220, 225 (1879)), a 1902 case (i.e. *State v. Nev. Cent. R. Co.*, 26 Nev. 357, 68 P. 294, 295 (1902)) and *Republican Attorneys Gen. Ass'n v. Las Vegas Metro. Police Dep't*, 136 Nev. 28, 31–32, 458 P.3d 328, 332 (2020), Defendants broadly assert that the exclusive remedies doctrine "provides that when a statute creates a remedy, it is exclusive of all common law remedies." See Motion [ECF 13] at 5:10-14.

Interestingly, none of the cases cited by Defendants even mention an "exclusive remedies doctrine" and they do not purport to have the broad implications urged by Defendants.  *Republican Attorneys Gen. Ass'n v. Las Vegas Metro. Police Dep't*, 136 Nev. 28, 31–32, 458 P.3d 328, 332 (2020), for instance, involved the issue of whether the Nevada Public Records Act (NPRA), which generally requires the disclosure of public records, "**explicitly** yields to the statute barring the release of confidential juvenile justice information." (emphasis added).    To the extent there is uniformity in cases involving the exclusive remedies doctrine in Nevada, it seems to apply only when a statute sets forth a new regulatory framework and the legislation **explicitly** or by necessary implication provides that the remedies and/or procedures set forth therein are exclusive to all other remedies set forth under common law or other pre-existing statutes.  In other words, the legislation itself must clearly and completely preempt an entire subject matter from other statutorily created or available common law remedies.

Defendants' arguments regarding its alleged "exclusivity doctrine" simply compare "apples and oranges."  The "exclusivity doctrine" referred to by Defendants relates to expansion of statutory remedies by interpretation where there is no explicit intent for that expansion.

The doctrine as stated in *Yellow Jacket* does not reach common law remedies unless the intent to supplant those existing remedies is clear.  Thus, the exclusivity doctrine to which Defendants refer involves expansion by interpretation of newly created statutory remedies:  i.e., the apple.  And it does not of itself relate to abrogation of existing common law remedies unless there is a clear legislative intent to pre-empt:  i.e., the orange.  Here, assertion of common law remedies along with the statutory claim is clearly allowed as explained *infra*.

The Nevada Supreme Court has been very clear that abrogation of common law remedies and actions must be supported by clear legislative instruction to do so in the enabling legislation. See  *First Fin. Bank v. Lane*, 130 Nev. 972, 978, 339 P.3d 1289, 1293 (2014): "This court will not read a statute to abrogate the common law without clear legislative instruction to do so." Citing *Orr Ditch & Water Co. v. Justice Court of Reno Twp., Washoe Cnty.,* 64 Nev. 138, 164, 178 P.2d 558, 570 (1947).  Further, the Nevada Supreme Court has expressly held that the creation of an affirmative statutory remedy does not abrogate common law remedies absent explicit restrictive language doing so.

> If a statute gives a remedy in the affirmative, without containing any express or implied negative, for a matter which was actionable at common law, this does not as a rule take away the common–law remedy, but the party may still sue at common law as well as upon the statute. In such cases the statute remedy is regarded as merely cumulative. 1 R. C. L. 323, 324; 1 C. J. 988, 989, 990, 991, 1003, 1004; Pomeroy's Code Remedies (Fifth Edition) §§ 8, 9, 13; Hulley v. Chedic, supra.
>
> *Cann v. George B. Williams Land & Livestock Co.,* 56 Nev. 242, 48 P.2d 887, 890–91 (1935)

Significantly, in the instant Motion, Defendants fail to even cite to any provision of the Nevada Revised Statutes and/or Clark County Ordinances where any express procedure or remedy is created for the recovery of money/taxes for transient lodging collected by Defendants but not paid to Clark County.  Defendants have failed to identify the remedy provided by any statute or

ordinance that it claims exclusively preempts all other statutory or common law actions/remedies merely because the subject matter relates to unpaid transient lodging taxes.  Further, upon review of the provisions of Chapter 4.08 of the Clark County Ordinances, there is no provision which expressly or by necessary implication indicates a legislative intent to abrogate common law actions and remedies or other statutory actions or remedies like the Plaintiffs Seventh Claim for Relief for violation of Nevada's Deceptive Trade Practices Act.  There is simply no authority standing for the proposition that Chapter 4.08 of the Clark County Ordinances abrogates or could abrogate the rights and remedies set forth in NRS Chapter 598 provided to a proper plaintiff for Defendants' violation of the Nevada Deceptive Trade Practices Act.

Further, the interpretation of the exclusive remedies doctrine advanced by Defendants would render meaningless certain provisions of Clark County Ordinances Chapter 4.08.  As set forth in more detail in Section IV hereof, Chapter 4.08.055(b) establishes that the taxes collected by Defendants "are public monies from the moment of their collection" and are held in trust for the benefit of Clark County by the Defendants.  There would be no reason whatsoever for the ordinance to define the operator collecting the taxes from the consumer as a trustee over public funds unless Clark County could seek collection of such monies from the operator under common law theories derived from the trust relationship, as for instance conversion and breach of fiduciary duties.  Yet, Defendants nonsensically argue that such common law remedies based upon legal relationships created by statute are foreclosed by the very statute which creates the legal relationship itself.

Defendants' broad application of the exclusive remedies doctrine leads to further absurd conclusions which can best be highlighted by analogy.  In or about 1987, the Nevada legislature adopted the Uniform Securities Act.  Therein, they created a new statutory private right of action and a private remedy for securities fraud as defined in the Uniform Securities Act in NRS 90.660.

Under Defendants' interpretation of the exclusive remedies doctrine, the creation of a new action and remedy for Securities Fraud necessarily abrogated a person's ability to proceed with common law claims in any case where the subject matter related to alleged securities fraud under NRS Chapter 90.  Yet, as this Court has no doubt experienced itself, complaints alleging securities fraud under NRS Chapter 90 routinely include other claims as for instance for securities fraud under federal law, common law fraud, breach of fiduciary duty, conversion and the like.  It is difficult to fathom any defendant subject to a securities fraud claim under NRS Chapter 90 arguing that the exclusive remedies doctrine abrogated all common law or other statutory claims because the subject matter related to securities fraud and NRS 90.660 set forth a remedy therefore which must be construed as the exclusive and only remedy available.

Plaintiff has plead both common law and statutory rights of action in compliance with Rule 8 of the Federal Rules of Civil Procedure.  They are not barred by the exclusive remedies doctrine as asserted by Defendants.

### III.

### PLAINTIFF'S DECEPTIVE TRADE PRACTICE CLAIM IS PROPERLY PLED

**A. Plaintiff Has Standing Under NRS Chapter 598 and NRS 41.600.**

NRS 41.600 provides, in relevant part, as follows:

> **NRS  41.600    Actions by victims of fraud.**
> 1.    An action may be brought by any person who is a victim of consumer fraud.
> 2.    As used in this section, "consumer fraud" means: …
>  (e) A deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive.

This Court has previously considered what elements the Nevada Supreme Court would require for a private NDTPA claim for damages.  See *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 657–58 (D. Nev. 2009) cited by Defendants in their Motion.   "(T)he Nevada Supreme Court would require, at a minimum, a victim of consumer fraud to prove that (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff. *Id*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Contrary to Defendants' claims, *Picus,* supra., does not require a demonstration of reliance by Plaintiff on the alleged act of consumer fraud.  Rather, *Picus*, supra., requires the element of reliance when the basis for the consumer fraud alleged is a false representation made to the Plaintiff by Defendants.  However, in this case, Plaintiff herein is not the consumer who purchased the transient lodging from Defendants.

The central thrust of Defendants' standing argument is that "Plaintiff cannot be a victim of these alleged practices of Defendants because the complained of conduct was not directed toward Plaintiff." [Motion at 7:3-4].  However, the argument is based upon the faulty premise advanced by Defendants that only parties to the relevant consumer transactions (i.e. (1) travelers, (2) Defendants, and (3) hotel operators physically located within Clark County) are proper plaintiffs in an NDTPA claim.  [Motion at 7:6-10].

*Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1152–53 (9th Cir. 2011), another case cited by Defendants in their Motion, clearly establishes the standing requirements for a plaintiff to maintain an NDTPA action.  As noted therein, NRS 41.600(1) provides that "[a]n action may be brought by any person who is a victim of consumer fraud." *Id*. quoting *Nev. Power Co. v. District Court,* 120 Nev. 948, 102 P.3d 578, 583 n. 7 (2004) (per curiam).  A "victim of consumer fraud" need not be a "consumer" of the defendant's goods or services. See *Del Webb Communities, Inc.,* supra., citing *See S. Serv. Corp. v. Excel Bldg. Servs.,* 617 F.Supp.2d 1097, 1100 (D.Nev.2007) (allowing a business competitor to sue under NRS 41.600).

Here, the Complaint expressly alleges that Defendants have engaged in an act of consumer fraud.  [Complaint [ECF 1-1] at para.s 87-92].  The Complaint also sufficiently alleges both causation and damages.  [Complaint at para.s 92 and 93].  The Complaint further alleges that the means and methods by which Plaintiff is a victim of consumer fraud is that the business model itself utilized by each and every Defendant "deprives Nevada taxing authorities, including the County, of taxes

due them on the full value of the transaction whereby a consumer obtains transient lodging in a

hotel." [Complaint at para. 3].

> 3. For example, an online travel company such as Travelocity, Inc. obtains a room from a hotel at a previously negotiated wholesale price of, for instance $150. Travelocity, Inc. in turn sells that same hotel room to an occupant over the internet for $200. In this example, Travelocity, Inc. remits to the hotel the discount wholesale amount ($150) plus the occupancy tax calculated based upon the $150 discounted wholesale rate rather than on the $200 retail rate charged to the consumer. The hotel submits the tax on the $150 discounted wholesale rate to appropriate Nevada taxing authorities, including the County. Travelocity retains the $50 difference between the discounted wholesale rate ($150) and the retail rate charged to consumers ($200) plus any taxes and fees collected thereon. This business model deprives Nevada taxing authorities, including the County, of taxes due them on the full value of the transaction whereby a consumer obtains transient lodging in a hotel.
> Complaint at para. 3.

The allegations of the Complaint therefore clearly set forth Plaintiff's standing to pursue

its claims under the NDTPA.

**B. Plaintiff Has Satisfied Rule 9(b)**

Plaintiff has satisfied the pleading requirements set forth in FRCivP 9(b). Said Rule

provides as follows:

> (b) FRAUD OR MISTAKE; CONDITIONS OF MIND. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

The degree of particularity required in any given case must necessarily be determined with

reference to the type, nature and scope of the fraud alleged. "To comply with Rule 9(b), allegations

of fraud must be specific enough to give defendants notice of the particular misconduct which is

alleged to constitute the fraud charged so that they can defend against the charge and not just deny

that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)

quoting *Bly–Magee v. California,* 236 F.3d 1014, 1019 (9th Cir.2001). In the context of a fraud

suit involving multiple defendants as in the instant matter, Plaintiff must, at a minimum, "identif[y]

the role of [each] defendant[ ] in the alleged fraudulent scheme." *Swartz v. KPMG LLP,* supra.,

quoting *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9th Cir.1989).

The fraud claim in this case involves "consumer fraud" for engagement in deceptive trade practices defined in the NDTPA (NRS Chapter 598) by each Defendant.  Plaintiff alleges that the fraud is a systemic one that arises directly out of the business model adopted by each of the Defendants in selling transient lodging to consumers over the internet. Paragraphs 1 through 3 of the Complaint particularly describe the business model employed by Defendants, and each of them, and how it is utilized to perpetuate consumer fraud and harm Plaintiff by denying it of duly collected tax revenues to which Plaintiff is entitled.

Paragraph 1 of the Complaint alleges that each of the Defendants are "web-based hotel booking companies, who have knowingly engaged in a common practice/scheme to avoid payment of Nevada's and Clark County's Combined Transient Lodging Tax as required by Nevada law.  Paragraph 2 particularly describes the business model wherein Defendants (a) purchase rooms from hotels at discounted/wholesale prices; (b) sell the rooms over the internet to consumers at marked up retail prices together with certain "tax recovery and fees;" (c) charge consumer credit cards for the full retail price of the room and amounts sufficient to pay occupancy taxes on the retail price of the rooms; and, (d) are invoiced by the hotels for only the wholesale/discount rate plus taxes calculated on the wholesale/discount rate rather than the full retail rate charged to consumers.  Paragraph 3 of the Complaint alleges a particularized example of how the "business model deprives Nevada taxing authorities, including the County, of taxes due them on the full value of the transaction whereby a consumer obtains transient lodging in a  hotel."

As to each Defendants' role in participating in the fraud, in addition to alleging that each Defendant utilizes the business model described in paragraphs 1-3 of the Complaint, the Complaint further alleges as follows:

1.  "Defendants, and each of them, are 'managing agents of any type or character' of the operator/proprietor and have the same duties and liabilities as the operator/proprietor

in collecting and remitting the Combined Transient Lodging Tax to Clark County" (Complaint at para. 37); and,

2. "Defendants, and each of them, exercise judgment and discretion in performing the functions of an operator in connection with, among other things, advertising and marketing of the rooms to transient guests, the amount of rent and other fees to be charged to the transient guests, refund and cancellation policies applicable to the transaction and securing reservations and payment therefore from the transient guests. In fact, from initiation of first contact with the transient guest through completion of the taxable sale/rental transaction, the operator/proprietor is not engaged in the transaction with the transient guest at all and all policies and procedures applied to the transaction are within the control and discretion of Defendants"  (Complaint at para. 38);

3. "The Defendants charge and collect from transient guests the Combined Transient Lodging Tax calculated as a percentage of the full retail price Defendants charge transient guests for their rooms" (Complaint at para. 40);

4. "Defendants have been remitting to operators/proprietors only that portion of the Combined Transient Lodging Tax which was calculated as a percentage of the discounted wholesale price Defendants pay to operators/proprietors" (Complaint at para. 43);

5. "Operators/proprietors have remitted to Clark County only that portion of the Combined Transient Lodging Tax they have received from Defendants which was calculated as a percentage of the discounted wholesale price Defendants pay to operators/proprietors" (Complaint at para. 44);

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

6.  "Defendants directly remit no Combined Transient Lodging Tax to Clark County in

connection with the sale or rental of transient lodging in transient lodging

establishments to transient guests" (Complaint at para. 45).

The Complaint then sets forth how the above and foregoing constitutes "consumer fraud"

and is actionable under NDTPA.  Paragraph 88 alleges that the business model "falsely reports to

Clark County and other governmental bodies collecting a Combined Transient Lodging Tax that

the 'Rent' is the discounted wholesale amount charged to Defendants by the operator rather than

the retail 'Rent' paid by transient guests.  Paragraph 90 alleges that "(i)n lumping taxes together

in a single line item with taxes and other fees, Defendants disguise from both government bodies,

including Clark County, and Defendants' customers the actual amount of room taxes the customer

is paying for.  Said practice also disguises the amount and nature of the additional fees being

charged."  The Complaint then ties the alleged fraud all together by alleging that the above and

foregoing constitutes a deceptive trade practice in that the business model involves "the making of

misleading statements of fact concerning the price of goods or services for sale or lease, or the

reasons for, existence of or amounts of price reductions pursuant to NRS 598.0915(13) and/or (b)

knowingly making any other false representation in a transaction pursuant to NRS 598.0915(15)."

(Complaint at para. 92).

It can hardly be said that the allegations are not  "specific enough to give defendants notice

of the particular misconduct which is alleged to constitute the fraud charged so that they can defend

against the charge."  Nor can it credibly be asserted that the Complaint fails to identify the role of

each defendant in the alleged fraudulent scheme.

What Plaintiff has concededly not done is allege a specific time frame in which the

Defendants have utilized the business model alleged to be false and deceptive or the date of each

consumer transaction completed pursuant to the business model utilized by each Defendant.  Those

facts are uniquely and wholly within the knowledge of each of the Defendants.   Instead, Plaintiff has alleged that the Defendants are using the fraudulent business model and have been utilizing it "for a period of time presently unknown to Plaintiff." [Complaint at para. 46].

Pursuant to *Rocker v. KPMG, LLP*, 122 Nev. 1185, 148 P.3d 703 (2006), which was applicable to the Complaint as filed in the Eighth Judicial District Court,  Plaintiff is entitled to a relaxed pleadings standard because many of the material facts are particularly within the knowledge of the Defendants and Plaintiff should be allowed time to conduct necessary discovery.  The Ninth Circuit similarly recognizes a relaxed pleading standard when facts constituting the circumstances of the alleged fraud are peculiarly within the defendant's knowledge or are readily obtainable by him.  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  Provided that a complaint identifies "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations," it is sufficient.  *Gottreich v. San Francisco Investment Corp.,* 552 F.2d 866, 866 (9th Cir.1977).

In the event this Court determines more particularity is required, Plaintiff asks for leave to amend to add allegations on information and belief that satisfy Rule 9(b).

**C.  Reliance is Not Required for Plaintiff's NDTPA Claim.**

*Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 657–58 (D. Nev. 2009) analyzed the question of whether reliance is a required element for all NDTPA claims.  Therein, the court found that, pursuant to Oregon law, causation requires proof of the consumer's reliance-in-fact <u>when an alleged violation is an affirmative misrepresentation where the plaintiff claims to have acted upon a seller's express representations, as opposed to a failure to disclose</u>. *Id*.   Similarly, the court noted that California similarly requires a plaintiff suing for misrepresentations <u>in connection with a sale</u> to "prove she relied on a material misrepresentation." *Id.* The court further stated that "while Illinois does not require actual reliance, a plaintiff must show proximate causation, i.e., that she was in some manner deceived." *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The *Picus* court then concluded that "for a private NDTPA claim for damages, the Nevada Supreme Court would require, at a minimum, a victim of consumer fraud to prove that (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." *Id*. The court did not find that reliance was a required element generally. Rather, under the particular facts before it, the court stated that "because Defendants here allegedly made an affirmative misrepresentation and Plaintiff could prove she sustained damages as a result of Defendants' alleged misrepresentation only by demonstrating she relied upon a "Made in the USA" label, the Court concludes causation includes reliance in this case." *Id*.

In the case sub judice, Plaintiff Clark County does not allege that it was the consumer who purchased the hotel room pursuant to false representations or omissions of Defendants. Since Plaintiff is not the consumer, it could not have relied upon the false representations in making the purchase of the hotel room. All that is required is that Plaintiff was damaged by an act of consumer fraud by Defendants which caused it injury. Plaintiff has adequately alleged such in its Complaint.

**IV.**

**PLAINTIFF'S CONVERSION CLAIM IS APPROPRIATE**

Defendants analysis regarding Plaintiff's conversion claim is based upon a fundamental misconception of the legal and factual basis of the claim. Defendants start from the presumption that the unpaid taxes due constitute nothing more than a contractual obligation establishing a creditor-debtor relationship between Plaintiff and Defendants. (See Motion at 11:1-19: "Plaintiff's claim for 'conversion' here is nothing more than a claim that Defendants owe Plaintiff a general debt for additional amounts under the Lodging Tax that could be satisfied by the payment of monies from any source or account.")

//

//

Defendants' analysis wholly ignores Clark County Ordinance 4.08.055(b) which provides as follows:

> (b) Combined transient lodging taxes collected by the operator are public monies from the moment of their collection and shall be held in trust by the operator collecting such taxes for the use and benefit of the agencies for whom such revenues are collected.

By operation of law, the unpaid taxes are public monies belonging to Plaintiff at the moment of their collection.  By operation of law, those monies are held in trust by Defendants for the use and benefit of Plaintiff.  The unpaid taxes are not a general debt of Defendants arising out of a creditor-debtor relationship.

Paragraph 62 of the Complaint alleges that the "Plaintiff has the right to the immediate possession of the money representing the  taxes due and owing" from,  at least, "the date the Combined Transient Lodging Tax is due and payable to Clark County."  Paragraph 63 of the Complaint alleges that "Defendants wrongfully exercised dominion and control over the monies belonging to Clark County thereby depriving Plaintiff of the use and the benefit thereof." Clearly, as monies belonging to Clark County at the moment of its collection which are held in trust by Defendants, Plaintiff's conversion claim adequately sets forth the required elements for this cause of action under common law. This is fully consistent with Clark County Ordinance 4.08.055(b).

## V.

## PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM IS APPROPRIATE

Defendants arguments regarding Plaintiff's claim for breach of fiduciary duty fail for reasons similar to Defendants' arguments regarding conversion.  Defendants argue that no fiduciary duty generally exists between a taxpayer and the tax collecting agency.  The case they cite, *Franchise Tax Bd. of Cal. v. Hyatt*, 130 Nev. 662, 689, 335 P.3d 125, 143 (2014), does not support that broad proposition.  Therein, the taxpayer claimed that the government owed the taxpayer a fiduciary duty which argument was rejected.

Even if, as a general rule, a taxpayer owes no fiduciary duty to the government tax collecting agency for taxes owed, that rule is not applicable in this case.  Here, Plaintiff is not claiming that Defendants owe fiduciary duties to Plaintiff by virtue of any status of Defendants as "taxpayers."   Rather, Defendants owe fiduciary duties to Plaintiff because Defendants are "trustees" of public monies belonging to Plaintiff.

> Generally, a trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith. *Dick v. Peoples Mid–Illinois Corp.,* 242 Ill.App.3d 297, 182 Ill.Dec. 463, 609 N.E.2d 997 (1993). Further, a trustee owes a fiduciary duty to serve the interest of the beneficiaries with total loyalty, excluding all self-interest, and is prohibited from dealing with the trust's property for her individual benefit. *Dick,* 242 Ill.App.3d at 303–04, 182 Ill.Dec. 463, 609 N.E.2d 997.
>
> *Giagnorio v. Emmett C. Torkelson Tr.,* 292 Ill. App. 3d 318, 325, 686 N.E.2d 42, 46 (1997)

Paragraph 68 of the Complaint alleges that the "Combined Transient Lodging Tax constitutes the money and property of Clark County." This allegation is directly supported by the aforementioned Clark County Ordinance 4.08.055(b).   Paragraph 69 alleges that "(i)n that Defendants are holding the money and property belonging to Clark County and have collected the tax due from its customers in the transient lodging transaction, Defendants stand in a fiduciary relationship with Clark County as to the amount of taxes due and owing and/or collected from its customers."

In this matter, the consumer purchasing the hotel room from Defendants is the "taxpayer" who pays the Transient Lodging Tax.  The consumer pays the tax to Defendants who are "trustees" of the monies paid by the consumer for the benefit of Plaintiff.  As the trustee of the money, Defendants have a fiduciary duty to carry out the terms of the trust for the benefit of Plaintiff which includes paying the money to Plaintiff as directed by county ordinance.

//

//

## VI.

## PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS PROPERLY PLEAD

"Unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." *In re Amerco Derivative Litigation*, 252 P.3d 681 (2011) quoting *Nevada Industrial Dev. V. Beneditti*, 103 Nev. 360, 741 P.2d 802 (1987).   This claim for relief incorporates all other allegations made in the Complaint which aver that Defendants, utilizing a fraudulent business model, deceive consumers and government taxing authorities regarding the nature and amount of Transient Lodging Taxes being charged and collected in a consumer transaction.  They allege that Defendants collect the taxes which belong to Plaintiff and have retained them for Defendants own use and benefit.  Paragraph 76 specifically alleges that "(i)n retaining and failing to remit the Combined Transient Lodging Tax as described herein, Defendants have obtained a benefit that in equity and good conscience they should not have obtained or possessed because the benefits rightfully belonged to Plaintiff."

These allegations fully satisfy the requirements of FRCivP 8(a)(2) which only requires that the Complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  While Defendants are free to try to establish that the alleged benefit is not a benefit at all through discovery and litigation, they are not free to do so on a motion to dismiss.

## VII.

## PLAINTIFF'S CONSTRUCTIVE TRUST CLAIM SHOULD BE DISMISSED

Plaintiff concedes  that a constructive trust is a remedy rather than a stand-alone cause of action.  In that Plaintiff has included imposition of a constructive trust as a remedy in its prayer for relief, assuming the Court finds it has subject matter jurisdiction over this case, this claim should be dismissed as an independent cause of action but should remain as a requested remedy.

//

//

## IV.

## CONCLUSION

For the above and foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety because the Court lacks subject matter jurisdiction of the matter.  Assuming the Court finds it has subject matter jurisdiction over this case, the Motion should be denied as to all claims for relief except for the claim for constructive trust.  Constructive trust will still be a viable remedy as prayed for but is not a standalone cause of action.

Respectfully submitted this 4th day of October 2021.

CLARK HILL PLLC

 /s/ Mark S. Dzarnoski, Esq.
A. William Maupin, Esq. (NSBN 1315)
Dominic P. Gentile, Esq. (NSBN 1923)
Michael Cristalli, Esq. (NSBN 6266)
Bert Wuester, Esq. (NSBN 5556)
Mark S. Dzarnoski, Esq. (NSBN 3398)
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th  day of October 2021, I served a true and correct copy of

the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS** via

the Court's electronic filing system only, pursuant to the Nevada Electronic Filing and conversion

Rules, Administrative Order 14-2, to all parties currently on the electronic service list.

/s/ Tanya Bain

_____

An Employee of Clark Hill, PLLC